# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| Ledge Lounger, Inc.<br><br>          **Plaintiff,**<br><br>v.<br><br>Global Lift Corp.,<br>d/b/a Global Pool Products,<br><br>          **Defendant.** | **Case No. 4:23-cv-04258**<br><br>**Defendant Global Lift Corp.'s Motion to Dismiss or Transfer** |

### Defendant Global Lift Corp.'s Motion to Dismiss or Transfer

Defendant Global Lift Corp. ("Global") moves this Court to dismiss for lack of personal jurisdiction under Federal Rules of Civil Procedure 12(b)(2), or to transfer this case to the proper forum—the Eastern District of Michigan, Northern Division—under 28 U.S.C. § 1404(a). In the alternative, should the Court find that there is personal jurisdiction and decline transfer, the Court should dismiss Plaintiff's trade dress claims under Rule 12(b)(6) for failure to state a claim.

## Table of Contents

Table of Authorities ............................................................................................ ii

Statement of Nature and Stage of the Proceeding ............................................. 1

Statement of the Issues Presented ...................................................................... 2

Summary of Argument ........................................................................................ 3

Introduction ......................................................................................................... 4

Background .......................................................................................................... 4

Argument ............................................................................................................. 5

I.      Plaintiff's Complaint fails to set forth a *prima facie* basis for this
        Court's exercise of personal jurisdiction over Global. ........................... 5

II.     The Court should transfer this case to the Eastern District of
        Michigan, even if Plaintiff could adequately plead personal
        jurisdiction. ............................................................................................. 9

III.    Even if this Court had personal jurisdiction over Global, the
        Complaint fails to state a claim for relief on Plaintiff's trade dress
        claims. ................................................................................................... 15

        A.      Plaintiff's trade dress is not "inherently distinctive" as a
                matter of law. ............................................................................. 16

        B.      Plaintiff has not pled plausible facts on secondary meaning. .... 17

        C.      Plaintiff has not pled plausible facts suggesting that its trade
                dress is non-functional. .............................................................. 19

        D.      Plaintiff has not pled plausible facts showing infringement. ..... 20

IV.     Plaintiff's allegations are not plausible because it alleges rights in
        generic design features. ........................................................................ 21

Conclusion ........................................................................................................ 22

# Table of Authorities

## Cases

*Allied Marketing Grp. V. CDL Mktg., Inc.*,
   878 F.2d 806 (5th Cir. 1989) ........................................................................... 16

*Amazing Spaces, Inc. v. Metro Mini Storage*,
   608 F.3d 225 (5th Cir. 2010) ........................................................................... 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 15, 16

*Bayco Products, Inc. v. Lynch*,
   2011 WL 1602571 (N.D. Tex. Apr. 28, 2011) ............................................... 19

*Berg v. Symons*,
   393 F. Supp. 2d 525 (S.D. Tex. 2005) ............................................................ 21

*BNSF Ry. Co. v. Tyrrell*,
   581 U.S. 402 (2017) .......................................................................................... 6

*Bulkley & Assocs., LLC v. Dep't of Indus. Rels.*,
   1 F.4th 346 (5th Cir. 2021) ............................................................................... 6

*Canaday v. Anthem Cos., Inc.*,
   9 F.4th 392 (6th Cir. 2021) ............................................................................... 6

*Cap Barbell, Inc. v. Hulkfit Prods.*,
   Civil Action H-22-2371 (S.D. Tex. Feb. 27, 2023) ....................................... 19

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .......................................................................................... 5

*Ellis v. Great Sw. Corp.*,
   646 F.2d 1099 (5th Cir. 1981) ........................................................................ 10

*Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*,
   289 F.3d 351 (5th Cir. 2002) .......................................................................... 19

*Express Lien, Inc. v. Handle, Inc.*,
   2020 WL 1030847 (E.D. La. Mar. 3, 2020) ................................................... 18

*Fielding v. Hubert Burda Media, Inc.*,
   415 F.3d 419 (5th Cir. 2005) .......................................................................... 13

*Gen. Motors Corp. v. Lanard Toys, Inc.*,
    468 F.3d 405 (6th Cir.2006) ........................................................................ 20

*Guidry v. U.S. Tobacco Co.*,
    188 F.3d 619 (5th Cir. 1999) ......................................................................... 2

*Herman v. Cataphora, Inc.*,
    730 F.3d 460 (5th Cir. 2013) ......................................................................... 9

*In re Rolls Royce Corp.*,
    775 F.3d 671 (5th Cir. 2014) ......................................................................... 2

*In re Slokevage*,
    441 F.3d 957 (Fed. Cir. 2006) ..................................................................... 17

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ................................................................. passim

*Jackson v. Stevens Transp., Inc.*,
    2015 WL 221087 (N.D. Tex. Jan. 15, 2015) ................................................ 11

*M3GIRL Designs L.L.C. v. Purple Mountain Sweaters*,
    No. 3:09-CV-2334-G, 2010 WL 3699983 (N.D. Tex. Sept. 13, 2010) ........... 7

*Navarro Sav. Assn. v. Lee*,
    446 U.S. 458 (1980) .................................................................................... 13

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*,
    783 F.3d 527 (5th Cir. 2015) ....................................................................... 18

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
    253 F.3d 865 (5th Cir. 2001) ......................................................................... 7

Paz v. Brush Engineered Materials, Inc.,
    445 F.3d 809 (5th Cir. 2006) ......................................................................... 6

*PuraPharm Int'l (H.K.) Ltd. v. PurePharma, Inc.*,
    2015 WL 1808582 (S.D. Tex. Apr. 20, 2015) ......................................... 14, 15

*Qualls v. Prewett Enterprises, Inc.*,
    594 F. Supp. 3d 813 (S.D. Tex. 2022) ......................................................... 10

*Rush v. STIHL, Inc.*,
    No. 3:17-CV-915-DPJ-FKB, 2020 WL 1276103 (S.D. Miss. Mar. 17, 2020) ............... 7

*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
   882 F.3d 96 (5th Cir. 2018) ................................................................ 6

*Seiferth v. Helicopteros Atuneros, Inc.*,
   472 F.3d 266 (5th Cir. 2006) .............................................................. 5

*Seitz v. Envirotech Sys. Worldwide Inc.*,
   513 F. Supp. 2d 855 (S.D. Tex. 2007) .............................................. 7

*Seville v. Maersk Line, Ltd.*,
   53 F.4th 890 (5th Cir. 2022) .............................................................. 9

*Spiegelberg v. Collegiate Licensing Co.*,
   402 F. Supp. 2d 786 (S.D. Tex. 2005) ................................... 3, 14, 15

*Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*,
   651 F.2d 311 (5th Cir. 1981) ........................................................... 21

*Sunbeam Prods., Inc. v. West Bend Co.*,
   123 F.3d 246 (5th Cir. 1997) ........................................................... 16

*Sunrise Jewelry Mfg. Corp. v. Fred S.A.*,
   175 F.3d 1322 (Fed. Cir. 1999) ...................................................... 21

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
   532 U.S. 23 (2001) ........................................................................... 20

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763 (1992) ................................................................... 19, 20

*Wal-Mart Stores, Inc. v. Samara Bros.*,
   529 U.S. 205, 212 (2000) .......................................................... 16, 17

*Weber v. PACT XPP Techs., AG*,
   811 F.3d 758 (5th Cir. 2016) ........................................................... 10

*White v. U.S. Corr., L.L.C.*,
   996 F.3d 302 (5th Cir. 2021) ............................................................. 2

*Yeti Coolers, L.L.C. v. Mercatalyst, Inc.*,
   No. 1:22-CV-01337-DAE, 2023 WL 5278019 (W.D. Tex. Aug. 16, 2023) .................. 7

**Statutes**

28 U.S.C. § 102 ........................................................................................ 9

28 U.S.C. § 1404(a) .................................................................................. 10

28 U.S.C. § 1406(a) .................................................................................... 9

**Other Authorities**

McCarthy on Trademarks § 8:3 (4th ed.2001) .................................. 20

www.uscourts.gov/statistics/table/na/federal-court-management-
    statistics/2023/06/30-1 .................................................................... 13

## Statement of Nature and Stage of the Proceeding

The present case is a trademark infringement action brought by Plaintiff Ledge Lounger, Inc. against Defendant Global Lift Corp. on November 10, 2023. On December 19, 2023—following an unsuccessful December 13, 2023 telephonic meet-and-confer session—Defendant filed a letter requesting a premotion conference per this Court's Procedure § 6(b), seeking to file a motion to dismiss for lack of personal jurisdiction, to transfer venue, or to dismiss under Rule 12(b)(6). Plaintiff filed a response to the letter on December 21, 2023.

A pre-hearing conference was held before Magistrate Judge Andrew M. Edison on January 8, 2024. During the conference, Plaintiff's counsel declined Judge Edison's invitation to file an amended pleading, and similarly denied Plaintiff's verbal request for jurisdictional discovery (holding, instead, that any such request for discovery would need to be raised by motion, allowing Defendant an opportunity to respond). A briefing schedule for Defendant's motion was then issued.

## Statement of the Issues Presented

1. Plaintiffs have the burden of establishing personal jurisdiction through the allegations of their Complaint. Conclusory assertions do not satisfy this burden. Here, Plaintiff's complaint offers only conclusory "information and belief" allegations of jurisdiction. Should the Court dismiss for failure to set forth a *prima facie* case for jurisdiction?

   **Standard of Review:** *De Novo. Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999) ("We review de novo a district court's grant of a motion to dismiss for lack of personal jurisdiction")

2. Personal jurisdiction or not, a Court may transfer a lawsuit to a different forum. Courts adjudicating a transfer motion look to several factors, including the location of evidence and witnesses, and having local issues decided at home. In a trademark infringement case like this one, these factors generally tip towards transfer to the alleged infringer's home jurisdiction. Should the Court transfer this case to the Eastern District of Michigan, where Defendant resides?

   **Standard of Review:** Reviewable by writ of mandamus if "district court's ruling… was a clear abuse of discretion leading to a patently erroneous result." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (cleaned up); *accord In re Rolls Royce Corp.*, 775 F.3d 671, 676 (5th Cir. 2014) ("mandamus is an appropriate means of testing a district court's section 1404(a) ruling. Other means for review are unavailable.") (cleaned up)

3. To state a claim for violation of trade dress, a Complaint must allege facts—not conclusions—that plausibly show that the allegedly infringed trade dress has acquired secondary meaning, is non-functional, and non-generic. Here, Plaintiff has not alleged facts about secondary meaning, and its allegations confirm that Plaintiff's claimed trade dress is the functional, generic appearance of a curved lounge chair. Should the trade dress claims be dismissed for failure to state a claim?

   **Standard of Review:** *De Novo. White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 306 (5th Cir. 2021) ("a district court's grant of a Rule 12(b)(6) motion to dismiss is reviewed de novo.

## Summary of Argument

Defendant Global is a Michigan corporation with its principal place of business in Michigan. It has no offices or employees in Texas and, as Plaintiff's own complaint confirms, does not make direct sales. Plaintiff Ledge Lounger, Inc. has nonetheless filed this lawsuit in the Southern District of Texas, relying entirely on conclusory "information and belief" pleadings that Global satisfies the "stream of commerce" theory of personal jurisdiction with its Global Lounger (the Global product that allegedly infringes Plaintiff's purported trademark). However, the Fifth Circuit and other courts in this circuit have held that a party's conclusory, "information and belief" jurisdictional pleadings fail to set forth a plausible basis for personal jurisdiction under Rule 12(b)(6) and should be dismissed.

Further, a Court may also transfer a case under 28 U.S.C. § 1404(a) whether or not the Court has personal jurisdiction over the defendant. Here, this matter "might have been brought" in the Eastern District of Michigan, Northern Division—the location of Global's headquarters and its principal place of business. The Court looks to several factors in deciding whether a transfer is appropriate, with one of the "most important" and "critical and controlling" factors in a trademark case being the alleged infringer's principal place of business, because such lawsuits focus on the "activities of the alleged infringer, its employees, and its documents." *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 792 (S.D. Tex. 2005) (citing cases). Every other factor that favors one jurisdiction over the other also favors transfer: (1) the key documents are in Michigan; (2) Michigan is more convenient for willing witnesses; (3) other key witnesses are within the Eastern

District of Michigan's subpoena range; (4) the Eastern District has less-congested dockets; and (5) transfer will obviate the need for wasteful jurisdictional discovery.

Finally, if the Court does not transfer, it should dismiss Plaintiff's trade dress claims for failure to state a claim under Rule 12(b)(6). Courts routinely dismiss trade dress claims when a complaint alleges only in conclusory terms the basis for its claim that the trade dress has acquired secondary meaning. Yet that is all Plaintiff alleges here.

## Introduction

Plaintiff—in a rush to interfere with the operations of a small, distant competitor that had days earlier challenged its bogus trademark registration in the seating area of a lounge chair—filed a Complaint in this district that contains *no* facts supporting this Court's personal jurisdiction or venue. And it did so despite case law holding that in trademark infringement suits, the proper venue is the alleged defendant's principal place of business. The Court could dismiss on the face of the pleadings, but it should in the alternative simply transfer this case to where it belongs: the Eastern District of Michigan. And even if the Court does not dismiss on procedural grounds or transfer, it should hold that the Complaint also fails to state a claim for relief related to trade dress infringement.

## Background

Plaintiff Ledge Lounger, according to the Complaint, is a Texas corporation. Compl. ¶ 1. Defendant Global Lift Corporation is a Michigan-based corporation with its principal place of business in Bad Axe, Michigan. *Id.* ¶ 2. Global sells pool products, and recently designed a (non-infringing) lounge chair for use in in-ground swimming pools.

-4-

*See id.* ¶ 28. A short time ago, Ledge Lounger sent a threat letter to Global Lift to try to stave off legitimate competition by claiming it had trademark protection for having a curved pool chair—and that, as a result, no one else could sell curved chairs, despite their highly functional and generic nature. Global thus filed a cancellation action with the Patent and Trademark Office. *See* Ex. A, Nov. 6, 2023 Petition for Cancellation, Case No. 01447-0001. Within days, Plaintiff filed this action in furtherance of its scheme to prevent legitimate competition—a boilerplate complaint nearly identical to another it filed against another competitor a few months ago. *Compare* Complaint, ECF No. 1 *with* Complaint, *Ledge Lounger, Inc. v. Luxury Lounger, Inc.*, No. 4:23-cv-00727 (S.D. Tex.) As discussed below, however, the Complaint contains mostly assertions of legal elements, with no factual allegations supporting its claim that Global is subject to personal jurisdiction in this District.

## Argument

### I.  Plaintiff's Complaint fails to set forth a *prima facie* basis for this Court's exercise of personal jurisdiction over Global.

A party invoking the Court's personal jurisdiction over a defendant has the burden of proving jurisdiction. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006). A plaintiff must therefore establish either (1) general personal jurisdiction, which permits suit against an entity where it is essentially "at home," whether or not the lawsuit arises out of forum contacts, or (2) specific personal jurisdiction, which requires showing that the defendant purposefully took actions in the forum giving rise to the lawsuit in question. *See Daimler AG v. Bauman,* 571 U.S. 117, 132 (2014).

A party's pleadings must establish at least a "*prima facie* case of personal jurisdiction." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). The "district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a *prima facie* case for jurisdiction has been made" but may "consider the contents of the record at the time of the motion." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006). Although non-conclusory jurisdictional allegations must be accepted as true, "such acceptance does not automatically mean that a *prima facie* case for jurisdiction has been presented." *Sangha*, 882 F.3d at 101; *Bulkley & Assocs., LLC v. Dep't of Indus. Rels.*, 1 F.4th 346, 350 (5th Cir. 2021) (only "nonconclusory" and "uncontroverted" allegations accepted as true).

Here, Plaintiff's Complaint does not assert facts supporting general personal jurisdiction over Global, which is generally limited to the jurisdiction of a company's principal place of business or place of incorporation. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017); *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 396 (6th Cir. 2021). It acknowledges Global is a Michigan corporation headquartered there, Compl. ¶ 2; it has thus not pled facts plausibly alleging Global is subject to general jurisdiction in Texas.

Nor does Plaintiff plausibly plead specific jurisdiction because the Plaintiff's bare conclusory allegations of specific jurisdiction are not enough to establish a *prima facie* case of jurisdiction. Indeed—years before the Supreme Court's *Twombly* and *Iqbal* cases confirmed the need to plead plausible factual assertions rather than conclusions—the Fifth Circuit held that conclusory assertions of specific jurisdiction in a complaint cannot establish a *prima facie* case of personal jurisdiction, even if the opposing party does not

submit affidavits or other evidence on the jurisdictional issue. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001). In *Panda Brandywine*, as here, the allegations of minimum contacts rested on mere "information and belief" allegations, which did not satisfy the plaintiff's *prima facie* burden. *Id.*

Since *Panda Brandywine* was decided, other courts in the Fifth Circuit have similarly rejected conclusory or "information and belief" personal jurisdiction allegations at the pleadings stage. *See, e.g.*, *Seitz v. Envirotech Sys. Worldwide Inc.*, 513 F. Supp. 2d 855, 863 (S.D. Tex. 2007) (bare claim that defendant "appointed at least one" sales representative in the state to "solicit business for [its] product" was conclusory and failed to establish a *prima facie* case of personal jurisdiction); *Yeti Coolers, L.L.C. v. Mercatalyst, Inc.*, No. 1:22-CV-01337-DAE, 2023 WL 5278019, at *2 (W.D. Tex. Aug. 16, 2023) (holding, in trademark action, that plaintiff failed to establish prima facie case of personal jurisdiction when it alleged, "on information and belief" that the defendant facilitated third party sale of infringing product to Texas consumers); *M3GIRL Designs L.L.C. v. Purple Mountain Sweaters*, No. 3:09-CV-2334-G, 2010 WL 3699983, at *7 n.3 (N.D. Tex. Sept. 13, 2010) (bare allegation that goods "sold by the Defendants were directed to this forum, and it is reasonable to foresee that other products sold by the Defendants would also make their way into this forum" were "conclusory allegations of speculative contacts without any suggestion of supporting facts, even under [a] stream of commerce theory); *Rush v. STIHL, Inc.*, No. 3:17-CV-915-DPJ-FKB, 2020 WL 1276103, at *3 (S.D. Miss. Mar. 17, 2020) (bare allegation that defendant placed goods "into the

stream of commerce with the intent that the [goods] would be sold or used in Mississippi" was the sort of conclusory allegation that could not support jurisdiction).

Here, Plaintiff's jurisdictional allegations are limited to a single, entirely conclusory "information and belief" paragraph devoid of supporting facts:

> On information and belief, Global Pool purposefully directed business activities to Texas and this district by delivering products manufactured by or for Global Pool, including its Global Lounger, into the stream of commerce with the expectation that its products would be purchased by or used by consumers in Texas and this district. See https://global-poolproducts.com/find-a-dealer/ ("Global Pool Products does not sell direct to consumers but we are happy to help you find a dealer near you."). Upon information and belief, Global Pool's products, including the Global Lounger, have and are being sold through one or more dealers and distributors in Texas and this district. On information and belief, Global Pool sales representatives solicit sales of its products, including the Global Lounger, in Texas and in this district. On information and belief, Global Pool's business activities and contacts with Texas and this district are continuous and systematic.

Ex. A, Compl. ¶ 5. Plaintiff does not identify any alleged dealer who sells Global Lounger (or any other Global Lift product, for that matter) within Texas—not even via an internet website. It does not identify any alleged sales representatives or a single sale directly by Global within this forum—and, indeed, pleads itself out of such an allegation by admitting that Global does not even make direct consumer sales. It has not identified a sale to any Texas consumer through any distributor or representative of Global in Texas. And, when offered a chance to replead its complaint at Court's recent pre-motion conference, Plaintiff declined as it has nothing more to add. These bare, conclusory, information-and-belief allegations are precisely the sort of allegations disregarded by the Fifth Circuit in *Panda Brandywine* and by other district courts as addressed above. And

absent these conclusory allegations, there is *nothing* in Plaintiff's complaint factually supporting personal jurisdiction over Global. The Court could dismiss on the face of the pleadings alone—but, as discussed below, it should transfer the case to the forum where it belongs: the Eastern District of Michigan.

## II.    The Court should transfer this case to the Eastern District of Michigan, even if Plaintiff could adequately plead personal jurisdiction.

If a district court lacks personal jurisdiction over the defendant, it may "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013) (holding this statute applicable to transfers when a court lacks personal jurisdiction over the defendant.). Defendant Global is headquartered in—and has its principal place of business in—Bad Axe, Huron County, Michigan. Global does not dispute that it is subject to general personal jurisdiction in that forum. Thus, the proper district and division where this case should have been filed is the Eastern District of Michigan, Northern Division. *See* 28 U.S.C. § 102 (identifying Huron County, Michigan as within that district and division). By contrast, Plaintiff has failed to establish that Global is subject to jurisdiction here. While Plaintiff is not *entitled* to a transfer to the forum where it should have sued, *see Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894 (5th Cir. 2022), Global does not object to such a transfer, for it knows that Plaintiff will simply file a new suit there anyway if this one is dismissed.

But this court should transfer the case to the Eastern District of Michigan anyway under 28 U.S.C. § 1404(a), which it can do without having to decide the jurisdictional

issue. *Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1107 (5th Cir. 1981). The Court may transfer any lawsuit to "any other district or division where it might have been brought" for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). And the Court should grant a motion to transfer under § 1404(a) where "the movant demonstrates that the transferee venue is clearly more convenient," considering:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (internal quotation marks omitted). No factor is of dispositive weight, with the Fifth Circuit cautioning against a "raw counting of the factors that weighs each the same." *Id.* (cleaned up). Moreover, in this analysis, the plaintiff's choice of forum is given only some, non-determinative weight. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766–67 (5th Cir. 2016). Here, Global does not believe that the last two factors have any weight given that transfer is sought between two federal courts, and there is no conflict of law problem.[1] But the other factors all support transfer, including the most important one in a trademark case: the principal place of business of the alleged infringer.

---

[1] *See, e.g.*, *Qualls v. Prewett Enterprises, Inc.*, 594 F. Supp. 3d 813, 826 (S.D. Tex. 2022) ("as federal courts are experienced in applying the laws of other jurisdictions, transfer is not necessarily favored or disfavored due to the application of another state's law.")

1.      **Documentary proof is more easily found in Michigan.** The first factor "focuses on the location of documents and physical evidence relating to the case," with the question being "relative ease of access, not absolute ease of access." *TikTok*, 85 F.4th at 358 (cleaned up). This factor is weightier when the documentary evidence is physical, and less weighty if the "vast majority" of evidence is electronic *and* equally accessible in either forum. *Id.* This factor weights slightly in Global's favor. The documents of relevance to this case are in Bad Axe at Global's corporate headquarters, and collection from physical devices would have to take place in Bad Axe; however, the documents are largely electronic. Ex. B, Steinman Decl. ¶ 15.

2.      **Compulsory process favors Michigan.** This factor favors transfer where "non-party witnesses ... are outside the [Southern] District's subpoena power" and "a proper venue that does enjoy absolute subpoena power for both depositions and trial" is available. *TikTok*, 85 F.4th at 360. Under Federal Rule of Civil Procedure 45(c)(1)(A), a non-party witness (which would include a party's employees who are not officers, directors, or managing agents)[2] can only be compelled to attend a deposition or trial within 100 miles of where the person resides, is employed, or regularly transactions business in person. Here, key Global employees with relevant information related to the engineering, design, and marketing of the Global Lounger reside and work in Michigan. Ex. B, Steinman Decl. ¶ 7-8. Some of these employees are non-managerial agents, under no obligation to appear for depositions absent a subpoena. Moreover, the companies that Global contracts with to create the Global Lounger, accessory parts for Lounger, and the

---

[2] *See Jackson v. Stevens Transp., Inc.*, 2015 WL 221087, at *2 (N.D. Tex. Jan. 15, 2015)

Lounger's packaging are all located in Michigan, within the Eastern District or less than 100 miles from it and within its subpoena power. *Id.* ¶¶ 10-14.

3.    **Cost of attendance for willing witnesses.** Under this factor, the Fifth Circuit uses a 100-mile threshold; when "the distance between an existing venue for trial ... and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *TikTok,* 85 F.4th at 361. Here, the key willing witnesses—Global's President/CEO Joshua Steinman, the primary person involved in the conception, design, and marketing of Global Loungers—is in Bad Axe, Michigan. Ex. B ¶¶ 2-7. Bad Axe and Houston are about 1,200 miles apart as the crow flies—well beyond the 100-mile threshold. *Id.* Other key employees, including managerial agents are in Michigan, or closer to Michigan than Texas. *Id.* at ¶¶ 8-9. The Eastern District of Michigan is a more convenient forum for willing witnesses. *Id.* ¶ 9.

4.    **Other practical problems from litigating in Texas favor a Michigan forum.** There are other case-specific practical problems favoring transfer here. Most notably, Plaintiff is forum-shopping, suing Global in a far-flung district without offering the slightest factual support for the notion that Global has done *anything* to harm Plaintiff in Texas. There is no need to reiterate the jurisdictional problems—problems the transfer will eliminate—other than to note that Plaintiff, acknowledging the dearth of factual support for its jurisdictional allegations, has *already* demanded jurisdictional discovery from this Court at the pre-motion conference. While Plaintiff's failure to "make even a preliminary showing of jurisdiction" means that jurisdictional discovery should be

-12-

denied, *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005), Plaintiff will surely demand jurisdictional discovery again should the Court dismiss for lack of personal jurisdiction on the face of the pleadings. This will involve, at a minimum, more motions practice on this collateral issue. And as the Supreme Court has aptly recognized, "litigation over whether the case is in the right court is essentially a waste of time and resources." *Navarro Sav. Assn. v. Lee*, 446 U.S. 458, 465 n.13 (1980). Since there is undisputedly jurisdiction in Michigan, a transfer will obviate the need for jurisdictional wrangling and make resolution of this case more "easy, expeditious and inexpensive."

     **5.**    **Administrative difficulties.** This factor looks to the "administrative difficulties flowing from court congestion" and "docket efficiency." *TikTok*, 85 F.4th at 363.  On this factor, the Southern District of Texas is considerably more congested than the Eastern District of Michigan. According to the most recent Federal Court Management Statistics,[3] the Southern District of Texas has 776 pending cases per judge, or 584 filings when "weighted" to account for the different amounts of time for different actions. The Eastern District of Michigan has only a third of that caseload, with 282 cases per judge, and 268 "weighted" cases. Perhaps reflective of docket congestion, the *initial* pretrial conference has not even been scheduled until March 6, 2024—longer than Rule 16(b) would suggest a scheduling order should be issued.[4] And if, as likely, Plaintiff insists on jurisdictional discovery to try to salvage their conclusory assertions about

---

[3] www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/06/30-1

[4] This date is both longer than 90 days from when Global was served, *and* more than 60 days from when counsel for Global entered an appearance.

personal jurisdiction, the resolution of any jurisdictional dispute (a dispute that will not be present in the Eastern District of Michigan) will delay things further. Thus, while this Court is in the best position to assess its own docket efficiency, there is reason to believe this case will proceed more expeditiously in the Eastern District of Michigan.

6.    **Local interests favor Michigan, the situs of any alleged harm.** This factor looks to the "significant connections between a particular venue and the events that gave rise to a suit," with the "place of the alleged wrong" being "one of the most important factors" in the transfer analysis. *TikTok*, 85 F.4th at 364. This factor "weighs heavily in favor of transfer" when "there is no relevant factual connection" to the current district. *Id.* And "intellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions." *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 792 (S.D. Tex. 2005) (citing cases). This is particularly so when there is no particular nexus between Defendant and the chosen forum; for instance, in *PuraPharm Int'l (H.K.) Ltd. v. PurePharma, Inc.*, the court transferred a trademark infringement suit to the defendant's headquarters, despite specific factual allegations of multiple sales in Texas, because "Texas has not been shown to have any greater localized interest in this trademark dispute than any other state where Defendants sell their products." 2015 WL 1808582, at *4 (S.D. Tex. Apr. 20, 2015).

This factor *heavily* favors transfer here. This is an intellectual property dispute. Global is headquartered in Michigan. Its only offices are in Michigan. Its decisions

related to the conception, designing, engineering, manufacturing, and marketing the Global Lounger were made in Michigan. Ex. B, Steinman Decl. ¶¶ 7-8, 10-14. And Plaintiff alleges that both Plaintiff and Global sell their products throughout the United States, rather than suggesting a Texas-specific dispute. *See* Compl. ¶¶ 7-13, 30-31, 38. The situs of the alleged harm here is Michigan, and under *Spiegelberg*, *PuraPharm*, and the cases cited therein, this lawsuit belongs in the Eastern District of Michigan.

\*        \*        \*

As discussed above, trademark infringement cases generally belong in the defendant's principal place of business—with that often being the "controlling consideration." That is the case here. But every other factor that favors one side over the other *also* warrants transfer to Michigan: the evidence is there, the witnesses are there, the docket is less congested, and litigation there will avoid the need for wasteful litigation over discovery. The Court should transfer this case to the Eastern District of Michigan, Northern Division.

## III.  Even if this Court had personal jurisdiction over Global, the Complaint fails to state a claim for relief on Plaintiff's trade dress claims.

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice." *Id.* Here, even if this Court had jurisdiction over Global, it should dismiss the trade dress claims.

Under the Lanham Act, "trade dress" refers to the total image and overall appearance of a product" and "may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 251 & n. 3 (5th Cir. 1997). Trade dress claims ask whether the "combination of features creates a distinctive visual impression, identifying the source of the product." *Id.* To state a trade dress claim, a party must first show that it is protectible, which requires proof that (1) the trade dress is either "inherently distinctive" *or* has acquired distinctiveness through secondary meaning; *and* (2) that the trade dress is "non-functional." *Allied Marketing Grp. V. CDL Mktg., Inc.*, 878 F.2d 806, 813 (5th Cir. 1989). Then, the party must show infringement— that is, substantial similarity of the defendant's product that is likely to confuse consumers. *Id.* Here, Plaintiff's complaint recites only bare, conclusory recitations of law and fails to plead facts that give rise to a plausible trade dress claim.

## A. Plaintiff's trade dress is not "inherently distinctive" as a matter of law.

As a threshold matter when—as here—a plaintiff's trade dress is allegedly the design of a product, a plaintiff *must* establish secondary meaning. In *Wal-Mart Stores, Inc. v. Samara Bros.*, the Supreme Court held that product design "is not inherently distinctive" as a matter of law. 529 U.S. 205, 212 (2000). This is so because "even the most unusual of product designs… is intended not to identify the source, but to render the product itself more useful or more appealing." *Id.* at 213. Consumers, it held, "should not

be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinary serves." *Id.* Thus, it held that product design "cannot be protected . . . without a showing of secondary meaning." *Id.* This is so whether the trade dress is registered or unregistered; the standard for protectability is the same. *Id.* at 210; *accord, e.g.*, *In re Slokevage*, 441 F.3d 957, 961 (Fed. Cir. 2006) (holding, under *Samara*, the Patent & Trademark Office cannot register trade dress without proof of secondary meaning).[5]

This case law cuts off the first avenue for Plaintiff's allegation of trade dress violations. Plaintiff's complaint makes only a few, scattered, and conclusory references to its product being "distinctive," without ever alleging that it is "inherently distinctive." *See* Compl. ¶¶ 7, 14, 48-49. But even if it had pled facts rather than bare conclusions, it acknowledges that the trade dress in question is the "design[] of Ledge Lounger's Furniture." *Id.* ¶ 7. There is no plausible basis for a trade dress claim resting on an "inherently distinctive" theory.

### B.   Plaintiff has not pled plausible facts on secondary meaning.

Plaintiff has also failed to plead plausible facts on secondary meaning. The "burden of demonstrating secondary meaning is substantial and requires a high degree of

---

[5]For this reason, Plaintiff's allegation that it has a trademark registration does not save its claims. In *Amazing Spaces, Inc. v. Metro Mini Storage*, the Fifth Circuit held that while a trademark registration normally serves as prima facie evidence of validity of the mark, when the mark is not inherently distinctive, the evidentiary value of the registration is "reduced … to evidence that *the PTO is of the opinion* that the [mark] is sufficiently distinctive to be legally protectable as a mark." 608 F.3d 225, 239 (5th Cir. 2010) (emphasis added). And, of course, the fact that the trademark is registered would be irrelevant to Plaintiff's Count II, which alleges infringement of *unregistered* trade dress under 15 U.S.C. §1125(a).

proof." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 544 (5th Cir. 2015) (cleaned up). The primary factors informing a secondary meaning analysis are:

> (1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress….

*Id.* In this Circuit, courts "routinely dismiss claims when plaintiffs allege secondary meaning in only conclusory terms without additional facts." *Express Lien, Inc. v. Handle, Inc.*, 2020 WL 1030847, at *12 (E.D. La. Mar. 3, 2020) (citing cases). Thus, allegations of secondary meaning that essentially allege only things like "trade dress drives Plaintiff's sales," that the plaintiff has "an extensive history of selling and advertising," or spent "significant amounts of money" on promoting trade dress fail to state a claim. *Id.*

Here, that is all Plaintiff does. Its complaint has several paragraphs alleging various forms of notoriety for their products—like being featured in magazines or used by celebrities, Compl. ¶¶ 11-12—without *any* allegations about how those circumstances have imbued Ledge Lounger chairs with protectible trade dress. Indeed, *every time* the Complaint's factual background references "secondary meaning," the complaint merely states in conclusory fashion that secondary meaning has been acquired, without facts explaining how or why. Compl. ¶ 7, 14-15, 20, 23, 30. And allegations that the chairs were featured in print, television, and social media or have been sold to commercial properties do not explain what, if any, product design features are perceived as identifying the manufacturer of the chair, let alone that those product design features identify *Ledge Lounger* as the manufacturer specifically. Plaintiff has failed to adequately

-18-

plead secondary meaning, and for that reason the trade dress claims should likewise be dismissed.

**C.    Plaintiff has not pled plausible facts suggesting that its trade dress is non-functional.**

Plaintiff also fails to plead facts showing that the alleged trade dress is non-functional, as it must do. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).  "If a product feature is functional, it cannot be protected trade dress." *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002). The traditional definition of a functional element is one that is either "essential to the use or purpose of the article" or "affects the cost or quality of the article." *Id.* This pleading requirement is not satisfied by merely adding a photograph of the product to the complaint. *See Bayco Products, Inc. v. Lynch*, 2011 WL 1602571, at *9 (N.D. Tex. Apr. 28, 2011) ("the mere fact that Bayco has attached photos of its trade dress does not aid Bayco. . . . The fact that the complaint is augmented by a visual depiction of the functional features alleged does not make those features any less functional."). Nor is the requirement satisfied by merely alleging that the "overall appearance of its product" and its "elements" are non-functional, without more. *See Cap Barbell, Inc. v. Hulkfit Prods.*, Civil Action H-22-2371, at *13 (S.D. Tex. Feb. 27, 2023).

Here, that is all Plaintiff does. The factual background makes precisely two allegations on non-functionality:

- "Ledge Lounger created the unique, distinctive, and non-functional designs of Ledge Lounger's Furniture." Compl. ¶ 7.

- "The designs of Ledge Lounger's Furniture have distinctive and nonfunctional features that identify to consumers that the origin of the furniture products is Ledge Lounger." *Id.* ¶ 14.

That is all. There is no explanation of how the curved *seating section* of a chair—perhaps the quintessential functional part of any chair—is nonfunctional, let alone how those non-functional elements identify Plaintiff as the manufacturer of the product. The complaint also fails to state trade dress claims for this reason.

### D.      Plaintiff has not pled plausible facts showing infringement.

Finally, Plaintiff fails to state a claim because they have not alleged how Global's trade dress creates a likelihood of confusion with Plaintiff's trade dress. *See Two Pesos*, 505 U.S. at 769. It is not enough to merely claim that Defendant is "using" the trade dress. Rather, the Complaint should "detail exactly what the trade dress consists of," offer "a precise expression of the character and scope of the claimed trade dress," separate out the "discrete elements which make up" the trade dress, and explain how the defendants are allegedly infringing. *See Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 415 (6th Cir.2006) (citing McCarthy on Trademarks § 8:3 (4th ed.2001)).

By contrast, a party cannot allege trade dress infringement by claiming that "an investment has been made to encourage the public to associate a particular functional feature with a single manufacturer or seller." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 34–35 (2001). But this is all Plaintiff alleges:

> As a result of Global Pool's activities related to the Infringing Products, there is a likelihood of confusion between Global Pool and its Infringing Products on the one hand, and Ledge Lounger and its trade dress protected products on the other hand.

Complaint at ¶ 29. Plaintiff's allegations that Global infringed trade dress by claiming there is confusion as to the overall products in general—as opposed to confusion over a particular functional feature—does not state a plausible claim for relief.

## IV. Plaintiff's allegations are not plausible because it alleges rights in generic design features.

Finally, Plaintiff's complaint fails to state plausible claims because it asserts rights in generic features of the design of a chair. "By definition, something that is generic cannot serve as a trademark because it cannot function as an indication of source." *Sunrise Jewelry Mfg. Corp. v. Fred S.A.*, 175 F.3d 1322, 1325 (Fed. Cir. 1999) (citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985)). A generic term provides "information about the nature of class of an article or service." *Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 315 (5th Cir. 1981). With trade dress, commonplace themes and styles are generic; thus, a "design may be generic if it is so common in the industry that it is incapable of serving to identify any one particular source." *Berg v. Symons*, 393 F. Supp. 2d 525 (S.D. Tex. 2005).

Here, Plaintiff's registration merely describes the mark as "a three-dimensional configuration of a chair curved like a wave where the back of the chair slopes down and the lower half of the chair curves up and down towards the right." This description—which is not entitled to a presumption of validity, *see supra* n. 5—is merely a generic description of curved lounge chairs as a category. Plaintiff's own complaint illustrates the generic nature of its purported trade dress by attempting to provide a longer list of curves and slopes of the chair to identify its alleged common law rights as compared to its

registration. *Compare* Compl. ¶ 18 *with* Compl. ¶ 21. But that longer list is no more specific. There is no plausible way to distinguish any of Plaintiff's alleged trade dress from generic features of any seat with curves. Plaintiff's purported trade dress is—under the allegations of the Complaint itself—the appearance of a curved chair. That is not protectible.

### Conclusion

The Court should transfer this case to the Eastern District of Michigan, whether or not it finds Plaintiff has failed to plead personal jurisdiction (as there is jurisdiction in that district and, even if there was jurisdiction here, transfer is warranted). If the Court does not transfer, it should dismiss the trade dress claims for failure to state a claim.

Respectfully submitted,

Andy Tindel
Texas State Bar No. 20054500
S.D. Tex. Bar No. 8015
MT² LAW GROUP
MANN | TINDELL | THOMPSON
Attorneys for Defendant
112 E. Line St., Ste. 304
Tyler, TX  75702
Tel: (903) 596-0900
Fax: (903) 596-0909
Email:  atindel@andytindel.com

*/s/ Thomas J. Davis*
Thomas J. Davis (S.D. Tex. No. 3866112)
KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.
Attorneys for Defendant
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
Tel: (248) 645-0000
Fax: (248) 458-4581
tdavis@khvpf.com

Dated: January 18, 2024

## Certificate of Service

I hereby certify that on January 18, 2024 I electronically filed this document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

/s/Thomas J. Davis
Thomas J. Davis (S.D. Tex. No. 3866112)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI  48009
Tel: (248) 645-0000
Fax: (248) 458-4581
Email: tdavis@khvpf.com

## Certificate of Conference

I hereby certify that Defendant has complied with the meet and confer requirement of the Court's Procedures by communicating with counsel for Plaintiff on December 12 and 14, 2023, concerning the filing of Defendant's Motion to Dismiss or Transfer and Plaintiff was opposed to the relief requested in said motion. Accordingly, Defendant's Motion to Dismiss or Transfer is submitted as an opposed motion.

/s/Thomas J. Davis
Thomas J. Davis (S.D. Tex. No. 3866112)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
Attorneys for Defendant
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI  48009
Tel: (248) 645-0000
Fax: (248) 458-4581
Dated:  January 18, 2024          Email:  tdavis@khvpf.com
502468

-23-