**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **Ledge Lounger, Inc.,** | **Case No. 4:23-cv-04258** |
| **Plaintiff,** | **Jury Trial Demanded** |
| **v.** | |
| **Global Lift Corp.** **d/b/a Global Pool Products,** | |
| **Defendant.** | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT
<u>GLOBAL LIFT CORP.'S MOTION TO DISMISS OR TRANSFER</u>**

## TABLE OF CONTENTS

I.  NATURE AND STAGE OF THE PROCEEDING ........................................................1

II. STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ...........................1

III. SUMMARY OF THE ARGUMENT ........................................................................2

IV. ARGUMENT ...............................................................................................................3

    A.  The Complaint Set Forth a *Prima Facie* Basis for Personal Jurisdiction ........3

    B.  Jurisdictional Discovery Is Warranted ................................................................8

    C.  The Case Belongs in this Court and Should Not be Transferred to Michigan 9

        1.  Relative Access to Sources of Proof Weighs Against Transfer ...........10

        2.  Compulsory Process Does Not Favor Transfer .................................10

        3.  Cost of Attendance Weighs Against Transfer .....................................11

        4.  All Other Practical Problems Factor Does Not Favor Transfer ........11

        5.  Administrative Difficulties Factor Weighs Against a Transfer ..........11

        6.  Local Interest Favors Texas ...................................................................12

        7.  Familiarity with Governing Law Does Not Favor Transfer ...............13

        8.  Avoidance of Conflict of Laws ..............................................................13

        9.  Summary – None of the Factors Weigh in Favor of Transfer ...........13

V.  THE COMPLAINT STATES CLAIMS FOR RELIEF OF TRADE DRESS
INFRINGEMENT ........................................................................................................13

    A.  The Complaint States a Claim for Trade Dress Infringement of a *Registered*
Trade Dress ........................................................................................................14

    B.  The Complaint States a Claim for Infringement of Unregistered Trade Dress
........................................................................................................................15

        1.  Ledge Sufficiently Plead Secondary Meaning ....................................15

        2.  Ledge Sufficiently Plead That its Trade Dress Is Non-functional ......16

        3.  Ledge Plead Plausible Facts Showing Infringement ..........................17

VI. CONCLUSION ...........................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ainsworth v. Moffett Eng'r, Ltd.*,
   716 F.3d 174 (5th Cir. 2013) ...........................................................................................1, 4

*Alcon Labs., Inc. v. Lens.com, Inc.*,
   No. 18-cv-407, 2019 WL 254038 (E.D.N.Y. Jan. 17, 2019).....................................12

*Amazing Spaces, Inc. v. Metro Mini Storage*,
   608 F.3d 225 (5th Cir. 2010) ...............................................................................2, 14, 15

*Aromatique, Inc. v. Gold Seal, Inc.*,
   28 F.3d 863 (8th Cir. 1994) ...........................................................................................14

*Bearry v. Beech Aircraft Corp.*,
   818 F.2d 370 (5th Cir. 1987) ...........................................................................................4

*Beatriz Ball, LLC v. Barbagallo Co., LLC*,
   40 F.4th 308 (5th Cir. 2022) ..................................................................................14, 16

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................................16

*CAP Barbell, Inc. v. HulkFit Prods., Inc.*,
   No. 22-cv-2371, 2023 WL 2247057 (S.D. Tex. Feb. 27, 2023)..............................17

*Cicalese v. Univ. Tex. Med. Branch*,
   924 F.3d 762 (5th Cir. 2019) .........................................................................................16

*Clemens v. McNamee*,
   615 F.3d 374 (5th Cir. 2010) ...........................................................................................1

*ConocoPhillips Co. v. In-Depth Compressive Seismic Inc.*,
   No. 20-cv-04385, 2021 WL 1854516 (S.D. Tex. May 10, 2021)..............................7

*Elvis Presley Enter., Inc. v. Capece*,
   141 F.3d 188 (5th Cir. 1998) ....................................................................................2, 14

*Felch v. Tansportes Lar-Mex*,
   92 F.3d 320 (5th Cir. 1996) .............................................................................................5

*Gen. Motors Corp. v. Lanard Toys, Inc.*,
   468 F.3d 405 (6th Cir. 2006) .........................................................................................18

*Goodman Co., L.P. v. A & H Supply, Inc.*,
   396 F.Supp.2d 766 (S.D. Tex. 2005) .............................................................................9

*Houston Trial Reports, Inc. v. LRP Publs., Inc.*,
   85 F. Supp. 2d 663 (S.D. Tex. 1999) .........................................................................9, 11

*In re Planned Parenthood Fed'n Am., Inc.*,
   52 F.4th 625 (5th Cir. 2022) .............................................................................10, 11, 12

*In re Radmax, Ltd.,*
   720 F.3d 285 (5th Cir. 2013) ...........................................................................9, 13

*In re TikTok,*
   85 F.4th 352 (5th Cir. 2023) ..........................................................................passim

*In re Volkswagen of Amer., Inc..*
   545 F.3d 304 (5th Cir. 2008) ..................................................................2, 9, 10, 12

*Innovation Ventures, LLC v. N2g Distributing, Inc.,*
   635 F.Supp.2d 632 (E.D. Mich. 2008) ............................................................17

*Johnson v. Johnson,*
   385 F.3d 503 (5th Cir. 2004) ...............................................................................6

*Kelly v. Syria Shell Petroleum Dev. B. V.,*
   213 F.3d 841 (5th Cir. 2000) ...............................................................................8

*M3Girl Designs LLC v. Purple Mountain Sweaters,*
   No. 09-cv-2334, 2010 WL 3699983 (N.D. Tex. Sep. 13, 2010) ..........................7

*McAirlaids, Inc. v. Kimberly-Clark, Corp.,*
   756 F.3d 307 (4th Cir. 2014) .............................................................................14

*McAlister v. FDIC,*
   87 F.3d 762 (5th Cir. 1996) .................................................................................8

*Packman v. Chicago Tribune Co.,*
   267 F.3d 628 (7th Cir. 2001) .............................................................................15

*Panda Brandywine Corp. v. Potomoc Elec. Power Co.,*
   253 F.3d 865, 869-70 (5th Cir. 2001) ..................................................................7

*Perritt v. Jenkins,*
   No. 11-cv-23, 2011 WL 3511468 (E.D. Tex. July 18, 2011), *report and recommendation adopted*, No. 11-cv-23, 2011 WL 3511465 (E.D. Tex. Aug. 11, 2011) ...................11

*Rush v. Stihl,*
   No. 17-cv-915, 2020 WL 1276103 (S.D. Miss. Mar. 17. 2020)............................7

*Sompo Amer. Ins. Co. v. Mesa Mechanical, Inc.,*
   No. 20-cv-1502, 2021 WL 3089333 (S.D. Tex. July 22, 2021) ...........................8

*Spiegelberg v. Collegiate Licensing Co.,*
   402 F.Supp.2d 786 (S.D. Tex. 2005) ................................................................13

*Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist.,*
   912 F.3d 805 (5th Cir. 2019) .............................................................................17

*Streamline Prods. Sys. Inc. v. Streamline Mfg., Inc.,*
   851 F.3d 440 (5th Cir. 2017) .............................................................................17

*Time, Inc. v. Manning,*
   366 F.2d 690 (5th Cir. 1966) ...............................................................................2

*TrafFix Devices, Inc. v. Marketing Displays, Inc.,*
   532 U.S. 23 (2001) ............................................................................................18

*Wal-Mart Stores, Inc. v. Samara Bros.*,
   529 U.S. 205 (2000) ............................................................................... 15

*Walter Oil & Gas Corp. v. Teekay Shipping*,
   270 F. Supp. 2d 855 (S.D. Tex. 2003) ................................................... 10

*Yeti Cooler LLC v. Mercatalyst, Inc.*,
   No. 22-cv-01337, 2023 WL 5278019 (W.D. Tex. Aug. 16, 2023), *report and recommendation rejected sub nom. YETI Coolers, LLC, Plaintiff, v. Mercatalyst, Inc., TerraCycle US, LLC, Aksha Plastic, Inc., Devang H. Patel, Oscar Guel, Robert N. Rezak, Glob. Xcessories, Inc., & Daniel Gavrielov, Defendants*, No. 22-cv-01337, 2023 WL 8361749 (W.D. Tex. Dec. 1, 2023) ................................................................................................. 7

*YETI Coolers, LLC v. Imagen Brands, LLC*,
   No. 16-cv-00578, 2017 WL 2199012 (W.D. Tex. May 18, 2017) ........... 18

*Z-Tel Commc'ns, Inc. v. SBC Commc'ns, Inc.*,
   331 F. Supp. 2d 567 (E.D. Tex. 2004) ................................................... 10

**Statutes**

15 U.S.C. § 1057(b) ....................................................................................... 14

15 U.S.C. § 1114 ...................................................................................... 1, 13

15 U.S.C. § 1114(1) ....................................................................................... 17

15 U.S.C. § 1115(a) .................................................................................. 2, 14

15 U.S.C. § 1125(a) ......................................................................................... 1

28 U.S.C. § 1404(a) ......................................................................................... 9

Tex. Bus. & Com. Code § 16.103 .................................................................... 1

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller,
   Federal Practice and Procedure § 1224 (2d ed. 1990) ............................ 7

6 J. Thomas McCarthy,
   McCarthy on Trademarks and Unfair Competition, § 32:38.40 (5th ed.) .............................. 12

## I.     NATURE AND STAGE OF THE PROCEEDING

On November 10, 2023, Plaintiff, Ledge Lounger ("Ledge"), filed its Complaint against Defendant, Global Lift Corp. d/b/a Global Pool Products ("Global"), alleging claims of registered and unregistered trade dress infringement in violation of the Lanham Act (15 U.S.C. § 1114 and § 1125(a)); trade dress dilution under the Lanham Act (15 U.S.C. § 1125(c)) and Tex. Bus. & Com. Code § 16.103; unfair competition and false designation of origin in violation of the Lanham Act (15 U.S.C. § 1125(a)); common law trade dress infringement, unfair competition, and misappropriation; and unjust enrichment. ECF #1.

On January 18, 2024, Global filed its Motion to Dismiss or Transfer ("Motion") (ECF No. 24), which Ledge hereby opposes for the reasons discussed below.

## II.    STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

1.     Whether Ledge plead a prima facie case of personal jurisdiction where Global delivered the accused product into the stream of commerce with the expectation that it would be purchased by or used by consumers in Texas.

**Standard of Review:** *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) ("The plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant and that burden is met by making a prima facie showing."); *Ainsworth v. Moffett Eng'r, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (under "stream-of-commerce" approach to personal jurisdiction, "minimum contacts requirement is met so long as the court 'finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.'").

2.     Whether the Court should deny Defendant's request to transfer this case to Michigan because Global failed to clearly demonstrate a transfer is warranted where Ledge's choice of forum (its home forum) is entitled deference, Ledge is a Texas corporation based in Katy,

Texas, Ledge's key witnesses reside in Texas, Texas is where Ledge's evidence is located, and Texas is the place of the alleged wrongs, and where a transfer would merely shift any inconvenience to Ledge.

**Standard of Review:** The movant bears the burden of proving good cause to transfer the case and must clearly demonstrate that a transfer is for the convenience of the parties and witnesses and in the interest of justice. *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir. 1966); *In re Volkswagen of Amer., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

3.      Whether Ledge stated a claim for trade dress infringement where it plead a federally registered trade dress, which constitutes prima facie evidence of the validity and the registrant's exclusive right to use the registered trade dress in commerce, and Global's infringement thereof.

**Standard of Review:** To prevail on its trade dress infringement claim, Ledge must prove that: (1) its trade dress qualifies for protection; and (2) the trade dress has been infringed by demonstrating a likelihood of confusion in the minds of potential consumers. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 (5th Cir. 2010); *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) (federal registration of trademark meets "threshold requirement that the plaintiff must possess a protectible mark") (citing 15 U.S.C. § 1115(a)).

## III.    SUMMARY OF THE ARGUMENT

First, Ledge's Complaint plead a *prima facie* case of personal jurisdiction under the "stream-of-commerce" approach. Global does not deny that it sells products, including the accused product, to dealers in Texas with the expectation that products would be purchased by or used by consumers in Texas. Therefore, Global's motion to dismiss for lack of personal jurisdiction should be denied.

Second, Global failed to demonstrate that a transfer to the Eastern District of Michigan would clearly be more convenient for the parties and witnesses. Ledge filed suit in its home forum,

as Ledge is a Texas company located in Katy, Texas. Its employees work and reside in this District, including those involved with the design and development of its trade dress, as well as those involved with the advertising, marketing, and selling of the Ledge product embodying its trade dress. Global's sales of its infringing products into Texas injures Ledge in Texas. Many of the transfer factors weigh against a transfer and none clearly favor a transfer. Therefore, Global's motion to transfer should be denied.

Finally, Ledge plead a plausible claim for infringement of its registered and unregistered trade dress. Ledge's asserted federal registration is presumed valid, which means the trade dress is presumed distinctive (has secondary meaning), non-functional, not generic, and, therefore, protectible. The Complaint's side-by-side comparison of Ledge's trade dress and the accused products is sufficient to demonstrate a likelihood of confusion. But the Complaint did more and also included factual allegations addressing a majority of the likelihood of confusion factors. Ledge also plead a plausible claim for infringement of its unregistered trade dress. The Complaint contains factual allegations addressing the majority of the secondary meaning factors, non-functionality of the trade dress, and factual allegations addressing a majority of the likelihood of confusion factors. Therefore, Global's motion to dismiss for failure to state a claim should be denied.

## IV.   ARGUMENT

### A.   The Complaint Set Forth a *Prima Facie* Basis for Personal Jurisdiction

This case involves a product (a chaise lounge chair) sold by a foreign defendant located in Bad Axe, Michigan, that infringes Ledge's registered and unregistered trade dress rights and has caused other actionable harms. Complaint, ¶ 26; ECF 24-3, ¶¶ 3, 7, 10. In such cases, the Fifth Circuit utilizes a "'stream-of-commerce' approach to personal jurisdiction, under which the minimum contacts requirement is met so long as the court 'finds that the defendant delivered the

product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.'" *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (quoting *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987)).

The Complaint alleges a *prima facie* case of personal jurisdiction over Global under the "stream-of-commerce" approach. Specifically, the Complaint alleges that "Global Pool purposefully directed business activities to Texas and this District by delivering products manufactured by or for Global Pool, including its Global Lounger, into the stream of commerce with the expectation that its products would be purchased by or used by consumers in Texas and this district." Complaint, ¶ 5. As noted in the Complaint, Global does not sell its products directly, but instead sells through dealers.[1] *Id.,* ¶5 ("See https://global-poolproducts.com/find-a-dealer/ ("Global Pool Products does not sell direct to consumers but we are happy to help you find a dealer near you.")). These allegations plausibly assert that Global provides its products to a Global dealer in Texas with the expectation those dealers will supply products—including the infringing products—to customers in Texas.

Global's Motion is most telling for what it does **not** contest. Global submitted the declaration of its President and CEO stating that "Global has no offices or facilities located outside of Michigan." ECF 24-3, ¶ 3. But the declaration says nothing about Global's contacts with Texas and this District, such as its dealer and manufacturing representative network. Notably, Global does not contest that it has "one or more dealers … in Texas and this district." Complaint, ¶ 5. Global does not contest that it "delivered products manufactured by or for Global Pool, including

---

[1] Direct sales by Global into Texas are not required to establish personal jurisdiction. *Luv N'Care, Ltd. v. Intsa-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (finding personal jurisdiction under stream-of-commerce approach where party had no direct sales or marketing in Louisiana and its only contact with Louisiana was sales of products to Wal-Mart).

its Global Lounger, into the stream of commerce." *Id.* And Global does not contest that its Global Lounger has been sold in Texas and this District. *Id.* Accordingly, the Court should credit Ledge's factual allegations regarding Global's acts directed to this District as true, as they are not controverted by Global. *Felch v. Tansportes Lar-Mex,* 92 F.3d 320, 326 n. 16 (5th Cir. 1996) ("we likewise credit the nonconclusional factual allegations of the complaint to the extent those are not controverted by any of the evidence"). If Global did **not** have dealers in Texas and this District, or if the infringing Global Lounger had **not** been sold in Texas and this District, surely Global would have said so. The silence on these points is deafening.

Global's criticism that the Complaint "[d]oes not identify any alleged dealer who sells Global Lounger (or any other Global Lift product, for that matter) within Texas" is a red herring. Motion, at 8. Global knows it does not publish the names of its dealers, and hides its dealers behind a Dealer Information Request form:

https://global-poolproducts.com/find-a-dealer/. That said, Texas Pool Supply appears to be a dealer of Global Lift, because it offers numerous of Global's product on its website.[2] Ex. B, https://tps.heritagepoolplus.com/brands/global. Texas Pool Supply has multiple locations throughout Texas, including in this District (Houston, Katy) Ex. C, https://tps.heritagepoolplus.com/storelocator/.

Global's contacts with Texas are not *de minimis*. As recently as last year, Global had at least one employee residing in Texas—a Southern Regional Sales Manager. Ex. G. As a "Regional" sales manager, that employee likely manages sales activity throughout Texas, including in this District. Notably, Global's declaration does not address whether it has employees in Texas, or this district, nor how many. ECF 24-3. Global also participates in trade shows in Texas to meet with its dealers, including dealers located in Texas. For example, Global had an exhibition booth at the Southwest Pool & Spa Show on February 8-11, 2023 in Houston and will have an exhibition booth at the show that will take place February 14-17, 2024 in San Antonio, Texas. Ex. E. Global (d/b/a Global Pool Products) is the Café lunch sponsor for the event. Ex. E. Also attending is Global's dealer Texas Pool Supply. *Id.* And Global utilizes manufacturers' representatives, such as WEK & Associates, that help sell and provide customer service throughout Texas and in this District. Ex. H, I.

Global also protests that Ledge's Complaint pleads allegations based on "information and belief," but such statements are appropriate at this stage "under the Federal Rules, especially in cases in which the information is more accessible to the defendant." *Johnson v. Johnson,* 385 F.3d 503, 531 n.19 (5th Cir. 2004) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice

---

[2] Other Global dealers, such as Pool Warehouse, sell Global's accused product on-line, and will presumably ship to customers located anywhere in the United States. Ex. F (Pool Warehouse webpage capture).

and Procedure § 1224 (2d ed. 1990)); *see ConocoPhillips Co. v. In-Depth Compressive Seismic Inc.*, No. 20-cv-04385, 2021 WL 1854516, *2-3 (S.D. Tex. May 10, 2021) (allegations based on information and belief that "proceed logically from a factually pleaded predicate" sufficient to state claim for patent infringement). Again, Global—not Ledge—possesses the relevant information about its dealers and suppliers, and where it has sold the accused products.

The cases cited by Global are distinguishable from the present case. In *Rush v. Stihl*, the court found the stream-of-commerce jurisdictional approach did not apply to a party that only designed a product because "the designer has no finished product to place in the stream of commerce." No. 17-cv-915, 2020 WL 1276103, at *4 (S.D. Miss. Mar. 17, 2020). In *Panda Brandywine Corp. v. Potomoc Elec. Power Co.*, the jurisdictional allegations were insufficient because the tortious interference claims involved financing agreements that were not governed by Texas law, not to be performed in Texas, and "have no relation to Texas other than the fortuity that Appellants reside there." 253 F.3d 865, 869-70 (5th Cir. 2001). In *Yeti Cooler LLC v. Mercatalyst, Inc.*, the court denied entry of default judgment because the motion failed to show any contact between Guel (a California resident) and the State of Texas. No. 22-cv-01337, 2023 WL 5278019 (W.D. Tex. Aug. 16, 2023), *report and recommendation rejected sub nom. YETI Coolers, LLC, Plaintiff, v. Mercatalyst, Inc., TerraCycle US, LLC, Aksha Plastic, Inc., Devang H. Patel, Oscar Guel, Robert N. Rezak, Glob. Xcessories, Inc., & Daniel Gavrielov, Defendants*, No. 22-cv-01337, 2023 WL 8361749 (W.D. Tex. Dec. 1, 2023). In *M3Girl Designs LLC v. Purple Mountain Sweaters,* the court dismissed a copyright claim for lack of personal jurisdiction finding "one sale to a Texas resident, which was initiated by the Texas resident using the defendants' website, is not enough to demonstrate purposeful availment." No. 09-cv-2334, 2010 WL 3699983, at *7 n. 3 (N.D. Tex. Sep. 13, 2010).

- 7 -

Global's Motion to dismiss for lack of personal jurisdiction should be denied out of hand. Ledge's Complaint properly pleads personal jurisdiction based on the widely accepted stream-of-commerce approach; Global does not contest that it has dealers in this District or that it has delivered products into this District; and Ledge's information and belief allegations are sufficient for this stage of the proceeding.

### B. Jurisdictional Discovery Is Warranted

If the Court is not inclined to deny Global's Motion, Ledge respectfully requests "an opportunity for discovery" relating to the questions of personal jurisdiction and venue. *McAlister v. FDIC,* 87 F.3d 762, 766 (5th Cir. 1996). In this case, personal jurisdiction under the stream-of-commerce principle turns on whether Global purposefully directed business activities to Texas and this District by delivering the Global Lounger chair into the stream of commerce with the expectation that its product would be purchased by or used by consumers in Texas and this District. These are factual questions that can be resolved through limited, jurisdictional discovery.

Global—not Ledge—possesses information regarding the identity of its dealers in Texas (and in this District) and whether Global has sold the accused product to dealers in Texas. Global's Texas dealer network, Texas employees, Texas representatives, attendance at Texas trade shows, and any sales of the accused product into Texas are all proper subjects of discovery and would resolve this jurisdictional dispute. *See Sompo Amer. Ins. Co. v. Mesa Mechanical, Inc.*, No. 20-cv-1502, 2021 WL 3089333, *2 (S.D. Tex. July 22, 2021) ("Plaintiffs should 'describe the discovery they contend should have been allowed, what facts they hoped to obtain from such discovery, [and] how it would produce information that would support specific jurisdiction.") (citing *Kelly v. Syria Shell Petroleum Dev. B. V.,* 213 F.3d 841, 855 (5th Cir. 2000) (alterations in original).

**C.      The Case Belongs in this Court and Should Not be Transferred to Michigan**

Global, as the party who seeks transfer under 28 U.S.C. § 1404(a), "must show good cause" for a transfer. *In re Volkswagen of Am.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). To carry its burden, Global must establish that the alternative venue (Michigan) is "clearly more convenient." *Id*. The Fifth Circuit weighs a number of factors in considering a motion to transfer:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*In re TikTok,* 85 F.4th 352, 358 (5th Cir. 2023) (cleaned up). No factor is of dispositive weight, and the Fifth Circuit has cautioned against a "raw counting of the factors" that "weigh[s] each the same." *In re Radmax¸Ltd.,* 720 F.3d 285, 290 n.8 (5th Cir. 2013).

Ledge brought suit in its home district where its principal place of business is located and its key witnesses reside. Ledge is a Texas corporation with a principal place of business in Katy, Texas. Complaint, ¶ 7. Ledge's choice of forum—its home forum—is entitled to deference. *Houston Trial Reports, Inc. v. LRP Publs., Inc.*, 85 F. Supp. 2d 663, 670 (S.D. Tex. 1999) ("[t]he plaintiff's choice of forum is normally given deference, especially when the forum is the plaintiff's 'home.'"). As discussed below, the transfer factors do not clearly favor transfer and the case should not be transferred because the "only practical effect is to shift inconvenience from the moving party to the nonmoving party." *Goodman Co., L.P. v. A & H Supply, Inc.*, 396 F.Supp.2d 766, 776 (S.D. Tex. 2005).

1. **Relative Access to Sources of Proof Weighs Against Transfer**

The first factor focuses on the location of "documents and physical evidence relating to the [case]." *Volkswagen*, 545 F.3d at 316. This factor weighs in favor of transfer only when the current district lacks any evidence relating to the case, which is not true here. *In re TikTok*, 85 F.4th at 358. This factor weights against transfer. Ledge's design, development, marketing, and sales activities relating to products utilizing its trade dress occurred in Texas. Documents and physical evidence relating to those activities are in Texas at Ledge's principal place of business. While Global's documentary evidence may be located in Michigan, Global concedes that "the documents are largely electronic." Motion, at 11. And when "the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum[,]" this factor bears less strongly on the transfer analysis. *In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022).

2. **Compulsory Process Does Not Favor Transfer**

The second factor focuses on "the availability of compulsory process to secure the attendance of witnesses." *Volkswagen*, 545 F.3d at 315. This factor does not favor transfer. Ledge's key witnesses reside in Texas, including those individuals who developed, designed, marketed, advertised, and sold products bearing Ledge's trade dress.

Global alleges that "key Global employees with relevant information related to the engineering, design, and marketing of the Global Lounger reside and work in Michigan." Motion, at 11; *see also id.* at Ex. B, ¶ 7 ("I [Joshua Steinman] am the main employee of Global involved in the creation, design, and marketing of the Global Lounger."). Where the key witnesses are employees of the party seeking a transfer, their convenience is entitled to less weight because the party is able to compel their attendance. *See Z-Tel Commc'ns, Inc. v. SBC Commc'ns, Inc.*, 331 F. Supp. 2d 567, 573 (E.D. Tex. 2004); *Walter Oil & Gas Corp. v. Teekay Shipping*, 270 F. Supp. 2d 855, 861 (S.D. Tex. 2003). And, Global has not identified any key witness or non-party witness

that would be unwilling to testify. *In re Planned Parenthood Fed'n Am.,Inc.*, 52 F.4th 625, 630-31 (5th Cir. 2022) ("[T]he availability of compulsory process 'receives less weight when it has not been alleged or shown that any witness would be unwilling to testify.'"). Accordingly, this factor weighs against transfer.

### 3.   Cost of Attendance Weighs Against Transfer

The third factor focuses on the cost of attendance for willing witnesses. *TikTok,* 85 F.4th at 361. Again, Ledge's witnesses are located in this District, while Global's are located in Michigan. Where "transfer would only serve to shift the inconvenience from Defendants to Plaintiffs, . . . this factor weighs against transfer." *Perritt v. Jenkins*, No. 11-cv-23, 2011 WL 3511468, at *5 (E.D. Tex. July 18, 2011), *report and recommendation adopted*, No. 11-cv-23, 2011 WL 3511465 (E.D. Tex. Aug. 11, 2011).

### 4.   All Other Practical Problems Factor Does Not Favor Transfer

The fourth factor considers all other practical problems that make trial of a case easy, expeditious and inexpensive. *TikTok,* 85 F.4th at 361. Contrary to Global's assertions, Ledge did not forum shop. Motion at 12. Ledge brought this suit in its home forum, which is "normally given deference." *Houston Trial Reports, Inc.*, 85 F. Supp. 2d at 670.

Global argues that "jurisdictional problems" may be avoided by a transfer, but fails to cite any precedent that this is something the fourth factor analysis should consider. Even assuming jurisdictional discovery is allowed, that discovery is not complex or overly involved as Global can simply identify its Texas dealers, employees, representatives, and sales records of its infringing products, including sales to Texas dealers.

### 5.   Administrative Difficulties Factor Weighs Against a Transfer

The fifth factor considers the administrative difficulties flowing from court congestion and focuses on docket efficiency. *TikTok*, 85 F.4th at 363. To the extent docket efficiency can be

reliably estimated, this Court is in the best position to do so. *See In re Planned Parenthood*, 52 F.4th at 631. Global cites statistics from June 2023 regarding the number of cases each judge in this District has to suggest that this District is more congested than Eastern District of Michigan and to argue that "this case will proceed more expeditiously" there. Motion at 13-14. Although judges in this District have more cases, recent statistics demonstrate that this District resolves civil cases more efficiently and expeditiously. The median time from filing to disposition for civil cases in this District is 7.9 months versus 8.5 months in the Eastern District of Michigan. Ex. D, (statistics from  https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf). The contrast in median time to trial in civil cases is even more stark—23.7 months versus 49.7 months in Michigan. *Id.* And 10.7% of Michigan cases are over three years old while roughly half as many are that old in this District (5.7%). *Id.* This factor weighs against a transfer.

### 6.   Local Interest Favors Texas

The sixth factor considers the local interest in having localized interests decided at home. *Volkswagen*, 545 F.3d at 315. The place of the alleged wrong is one of the most important factors in venue determinations. *TikTok*, 85 F.4th at 364.

Trade dress infringement occurs where an infringing sale is made, which in this case is Texas. *Alcon Labs., Inc. v. Lens.com, Inc.*, No. 18-cv-407, 2019 WL 254038, at *5 (E.D.N.Y. Jan. 17, 2019) (citing 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 32:38.40 (5th ed.) ("Today, almost all courts follow the rule that a claim of trademark infringement takes place where the allegedly infringing sales occur."). Moreover, Ledge's state law claims arise out Texas State law and concern sales in Texas only. *Alcon*, 2019 WL 254038, at *5 (local interest of trademark infringement in New York and New York State law claims weighed against transfer).

Global argues that the location of the alleged infringer's principal place of business weighs in favor of transfer. It does not. Again, this factor focuses on the place of the alleged wrong, which

is Texas. In *Spiegelberg*, the court transferred a trademark infringement case from Houston to Lubbock because *both* the trademark owner and alleged infringer were located in Lubbock and there was no tie to Houston other than the infringer's counsel. *Spiegelberg v. Collegiate Licensing Co.*, 402 F.Supp.2d 786, 790-91 (S.D. Tex. 2005). Here, Global's infringing acts in this District impacts a Texas company based in this District.

### 7.    Familiarity with Governing Law Does Not Favor Transfer

The seventh factor considers the current district's "familiarity with the law that will govern the case." *TikTok*, 85 F.4th at 358. Ledge's claims are based on federal law and Texas state law. This factor does not weigh in favor of a transfer because both districts are "equally capable of applying the relevant law." *Radmax*, 720 F.3d at 289.

### 8.    Avoidance of Conflict of Laws

This factor does not favor transfer because there is no potential conflict of laws.

### 9.    Summary – None of the Factors Weigh in Favor of Transfer

Global failed to establish that the alternative venue (Michigan) is "clearly more convenient." Indeed, not one of the transfer factors favors a transfer. Accordingly, Global's Motion to transfer should be denied.

## V.    THE COMPLAINT STATES CLAIMS FOR RELIEF OF TRADE DRESS INFRINGEMENT

The Complaint alleges nine causes of action, including infringement in violation of 15 U.S.C. § 1114 of a registered trade dress, infringement under 15 U.S.C. § 1125(a) of unregistered trade dress; trade dress dilution under federal and Texas state law, common law unfair competition and misappropriation, and unjust enrichment. Global's motion to dismiss does not address all of the causes of action. Instead, the motion only alleges that the "trade dress claims" fail to state a claim. Motion, at 15.

To prevail on its trade dress infringement claim, Ledge must prove that: (1) its trade dress qualifies for protection; and (2) the trade dress has been infringed by demonstrating a likelihood of confusion in the minds of potential consumers. *Beatriz Ball, LLC v. Barbagallo Co., LLC,* 40 F.4th 308, 317 (5th Cir. 2022). As discussed below, Ledge's Complaint sufficiently plead a claim for trade dress infringement of its registered and unregistered trade dress.

### A.   The Complaint States a Claim for Trade Dress Infringement of a *Registered Trade Dress*

Ledge's Count I alleges trade dress infringement of its federally *registered* trade dress. Complaint ¶¶ 16-18, 36-41. Ledge's registration constitutes prima facie evidence of the trade dress's validity and the registrant's exclusive right to use the registered mark in commerce with respect to the specified goods or services. 15 U.S.C. §§ 1057(b), 1115(a); *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 194 (5th Cir.1998) (citing Lanham Act § 33(a), 15 U.S.C. § 1115(a)). Registered marks are presumed to be distinctive and nonfunctional. *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 869 (8th Cir. 1994); *McAirlaids, Inc. v. Kimberly-Clark, Corp.*, 756 F.3d 307, 311 (4th Cir. 2014). The registration establishes that the registered trade dress satisfies the statutory requirements for trade dress protection, i.e., the trade dress is distinctive and nonfunctional.

Global argues in a footnote that Ledge's "trademark registration does not save its claims," but Global is wrong. Motion at 17 n.5. Global cites *Amazing Spaces,* but that case did not involve a motion to dismiss for failure to state a claim for trade dress infringement. Indeed, *Amazing Spaces* reinforces that a registered mark is "prima facie evidence that the mark is valid." *Amazing Spaces, Inc. v. Metro Mini Storage,* 608 F.3d 225, 239 (5th Cir. 2010). Instead, *Amazing Spaces* addressed, in the context of a motion for summary judgment, the effect of the presumption of validity when a party submits evidence that a mark is not distinctive.

At the pleading stage, Ledge is entitled to the presumption of validity afforded by its registration that its trade dress is protectible. Because the United States Patent and Trademark Office cannot register generic marks or trade dress, the presumption also dispenses of Global's argument regarding whether the trade dress is generic. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001) (a registered mark is presumed "not merely descriptive or generic.").

**B.     The Complaint States a Claim for Infringement of Unregistered Trade Dress**

**1.   Ledge Sufficiently Plead Secondary Meaning**

Ledge's Count II alleges a plausible claim for infringement of its *unregistered* trade dress. In "an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning." *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 216 (2000). Secondary meaning is established when, "in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Id.* at 211 (cleaned up). The Fifth Circuit has articulated seven factors to consider in determining whether a trade dress has acquired secondary meaning:

> (1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress.

*Amazing Spaces*, 608 F.3d at 248 (cleaned up).

Global argues that Ledge failed to plead plausible facts on secondary meaning, but again Global is wrong. The Complaint contains allegations regarding at least five of the seven secondary meaning factors:

- Factor 1 – length and use of the trade dress – Complaint, ¶ 7 ("For over a decade, Ledge Lounger has continuously engaged in … the design, development, manufacture, promotion and sale of outdoor furniture, including its Signature Chaise™ chair …");

- Factor 2 – volume of sales – Complaint, ¶ 8 ("Ledge Lounger has enjoyed significant sales of Ledge Lounger's Furniture throughout the United States, including sales to customers in the State of Texas.");[3]

- Factor 3 – amount and manner of advertising - Complaint, ¶ 8 ("Ledge Lounger has also invested tremendous resources in the … advertising, and marketing of Ledge Lounger's Furniture.");[4]

- Factor 4 – nature of use of the mark or trade dress in newspapers and magazines – Complaint, ¶ 9 ("Ledge Lounger's Furniture has been featured in numerous newspapers, magazines, and Internet articles and posts and in numerous television programs throughout the United States and Texas."); ¶ 10 (television program examples); ¶ 11 (magazine examples); ¶ 12 (celebrity social media posts);

- Factor 7 - defendant's intent in copying the trade dress – Complaint, ¶ 28 ("It is evident that Global Pool copied Ledge Lounger's extremely popular furniture designs, as illustrated below:") (image omitted).[5]

The Complaint properly alleges secondary meaning based on this factual foundation. Complaint, ¶ 7. Therefore, Ledge sufficiently plead secondary meaning. *See Beatriz Ball, LLC v. Barbagallo Co.,* 40 F.4th 308, 318 (5th Cir. 2022) (reversing district court finding that unregistered trade dress did not have secondary meaning where trade dress owner presented evidence of its sales volume, nature of use in newspaper and magazine, and defendant's intent in copying the trade dress).

### 2.      Ledge Sufficiently Plead That its Trade Dress Is Non-functional

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch,* 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[3] Ledge Lounger submitted evidence regarding its millions of dollars of sales of furniture bearing the trade dress during the application process for the registered mark. Ex. A, at ¶ 3.

[4] The declaration also addressed Ledge Lounger's manner and extent of advertising . Ex. A, at ¶¶ 4-7.

[5] "When two product designs are so very similar, an inference of intent is permissible. Moreover, evidence of deliberate copying can be a weighty factor if it appears the copying attempted to benefit from the perceived secondary meaning." *Beatriz Ball, LLC v. Barbagallo Co., LLC,* 40 F.4th 308, 320 (5th Cir. 2022).

At the motion to dismiss stage, Ledge need only state enough facts to support a plausible claim for trade dress infringement. *See Twombly*, 127 S.Ct. at 1974. Beyond pleading facts sufficient to put Defendants on notice of the claims against them, there is no requirement that Plaintiff plead its trade dress claim with further specificity. *Innovation Ventures, LLC v. N2g Distributing, Inc.*, 635 F.Supp.2d 632, 641 (E.D. Mich. 2008) (denying motion to dismiss trade dress claim).

Here, Ledge alleged that its unregistered trade dress is non-functional. Complaint, ¶¶ 7, 14. Moreover, the United States Patent and Trademark Office found that Ledge's registered trademark is non-functional, from which one can infer that the unregistered trade dress relating to a similar chair design is also non-functional. Nothing more is required.[6]

### 3.    Ledge Plead Plausible Facts Showing Infringement

To prevail on its infringement claims, Ledge Lounger will show that Defendant's Global Lounger chair is likely to cause confusion with Ledge Lounger's trade dress. 15 U.S.C. § 1114(1); *Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 810 (5th Cir. 2019). Eight non-exhaustive and flexible factors (or "digits") are examined in assessing a likelihood of confusion:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, (7) any evidence of actual confusion, and (8) the degree of care exercised by potential purchasers.

*Springboards to Educ.*, 912 F.3d at 812 (citing *Streamline Prods. Sys. Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 453 (5th Cir. 2017)).

---

[6] To the extent the Court finds the non-functional pleading statements insufficient, the proper course is to grant leave to Ledge to file an amended pleading. *See CAP Barbell, Inc. v. HulkFit Prods., Inc.*, No. 22-cv-2371, 2023 WL 2247057, *7 (S.D. Tex. Feb. 27, 2023).

Global's Motion ignores the legal framework for the likelihood of confusion analysis. Instead, Global cites the *General Motors* decision which addressed, in the context of summary judgment, whether trade dress was properly identified or described. *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 415 (6th Cir. 2006). The *TrafFix* decision also did not address the sufficiency of likelihood of confusion allegations in a motion to dismiss. *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001). Instead, *TrafFix* addressed the issue of functionality and whether the existence of an expired utility patent forecloses the possibility of the patentee claiming trade dress protection in the product's design. *Id.* at 28, 35.

Here, the Complaint alleges a likelihood of confusion and contains side-by-side images showing the close similarity of the parties' products and alleged copying. Complaint, ¶¶ 28-29. This alone is sufficient to plausibly plead a likelihood of confusion. *YETI Coolers, LLC v. Imagen Brands, LLC*, No. 16-cv-00578, 2017 WL 2199012, at *7 (W.D. Tex. May 18, 2017) (finding that plaintiff had sufficiently pled a likelihood of confusion where it had "produced photographs showing the close similarity between the parties' products" and alleged intentional copying).

The Complaint also makes numerous factual allegations supporting the likelihood of confusion factors:

- Factor 1 – Type of mark – Complaint, ¶ 43 ("Ledge Lounger's trade dress in its Signature Chaise™" chair);

- Factor 2 – Similarity between the two marks – Complaint, ¶ 28 (side-by-side images demonstrating similarity);

- Factor 3 – Similarity of the products – Complaint, ¶ 31 ("The Infringing Products Global Pool sells are the same types of products Ledge Lounger sells.");

- Factor 4 – Identity of the retail outlets and purchasers – Complaint ¶ 31 ("Global Pool promotes and sells, through its dealers, distributors and sales representatives, its Infringing Products to the same types of consumers as those to whom Ledge Lounger promotes and sells its furniture. … The channels of trade through which Global Pool markets and sells the Infringing Products are the same as those used by Ledge Lounger.");

- 18 -

- Factor 5 – Identity of the advertising media used – Complaint ¶¶ 9, 27 (internet advertising/website); and

- Factor 6 – Defendant's intent – Complaint ¶ 28 ("It is evident that Global Pool copied Ledge Lounger's extremely popular furniture designs, as illustrated below:)

Based on the foregoing, Ledge plead plausible facts to establish a likelihood of confusion.

## VI.   CONCLUSION

For the foregoing reasons, the Court should deny Global's Motion to Dismiss or Transfer.


Dated: February 9, 2024                    Respectfully submitted,

                                           BANNER & WITCOFF, LTD.

                                           By:  /s/Scott A. Burow
                                                Scott A. Burow (admitted in the Southern
                                                District of Texas)
                                                Attorney-In-Charge
                                                Illinois Bar No. 6242616
                                                Southern District of Texas Bar No. 3468321
                                                sburow@bannerwitcoff.com
                                                BANNER & WITCOFF, LTD.
                                                71 South Wacker Drive, Suite 3600
                                                Chicago, IL 60606
                                                Telephone: (312) 463-5000
                                                Facsimile: (312) 463-5001

                                                Matthew P. Becker (admitted *pro hac vice*)
                                                Illinois Bar No. 6255614
                                                mbecker@bannerwitcoff.com
                                                Christian T. Wolfgram (admitted *pro hac vice*)
                                                Illinois Bar No. 6333565
                                                cwolfgram@bannerwitcoff.com
                                                BANNER & WITCOFF, LTD.
                                                71 S. Wacker Drive, Suite 3600
                                                Chicago, IL 60606
                                                Telephone: (312) 463-5000
                                                Facsimile: (312) 463-5001

                                                ATTORNEYS FOR PLAINTIFF
                                                LEDGE LOUNGER, INC.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 9, 2024, a true and accurate copy of PLAINTIFF'S OPPOSITION

TO DEFENDANT GLOBAL LIFT CORP.'S MOTION TO DISMISS OR TRANSFER was filed

with the court through its ECF filing system, thereby providing notice to all counsel of record.


<u>*/s/ Scott A. Burow*</u>
Scott A. Burow
Attorney for Plaintiff